Arley WARD, Petitioner,

v.

Ray H. PAGE, Warden, Oklahoma State Penitentiary, Respondent.

Civ. No. 5442.

United States District Court
D. Oklahoma.

Feb. 25, 1965.

Gene Stipe, Stipe, Gossett & Stipe, McAlester, Okl., for petitioner.

Jack Swidensky, Asst. Atty. Gen., State of Oklahoma, Oklahoma City, Okl., for respondent.

BOHANON, District Judge.

Petitioner, Arley Ward, was charged with the crime of murder in the District Court of Tulsa County, Oklahoma, in 1947. After two days of trial, and before the case was submitted to the jury, the record shows that Petitioner changed his plea from "not guilty" to "guilty" of manslaughter in the first degree, and was sentenced by the Court to serve a term of forty years in the State Penitentiary. Petitioner appealed to the Court of Appeals of the State of Oklahoma, Ward v. State, 90 Okl.Cr. 120, 210 P.2d 790, and he was granted no relief. Petitioner then filed a Petition for Writ of Habeas Corpus, which was denied without opinion by the Oklahoma Criminal Court of Appeals. Petitioner then filed another Petition for Writ of Habeas Corpus with the same Court, which was denied, Ward v. Raines, 360 P.2d 953, on the ground that all matters presented in this Petition should have been raised on appeal. Petitioner then filed a Petition for Writ of Habeas Corpus with the

United States District Court for the Eastern District of Oklahoma, asserting:

1. That he had been denied the right of effective counsel; and

2. That his plea of "guilty" was not a free and voluntary act.

The Petitioner was afforded a hearing by the District Court, at which he appeared pro se at his request. The Court refused to issue the writ, and an appeal was taken to the Court of Appeals, Tenth Circuit.

We are here concerned only with one issue; that is, was Petitioner's plea of "guilty" voluntary, or was his plea made under circumstances showing it to be involuntary, upon the basis of promises made by the prosecution, and tacitly by the Trial Judge.

On the question of whether the plea of "guilty" was voluntary, the Court of Appeals said, in 336 F.2d 602:

"This issue of whether the plea was voluntary was raised by the petition and testimony was taken in the hearing below. The trial court however made no finding as to the voluntary nature of the guilty plea and in the order entered made no reference to it. This was a real issue raised by the applicant's petition; there was evidence on it before the court, and it should have been considered and disposed of by the findings and order."

The case was remanded for findings upon this issue. After remand by the Court of Appeals, and in accordance with the dictates thereof, the Petition for Writ of Habeas Corpus was then docketed for and was heard by this Court on the 30th day of December, 1964, at McAlester, Oklahoma, at which time a full and complete hearing was had, and Petitioner was represented by able counsel, Mr. Gene Stipe, appointed by this Court to protect Petitioner's legal rights.

Petitioner contends that his Constitutional rights under Section I, United States Constitution, Fourteenth Amendment, were violated, in that his plea was not voluntarily entered, thus not in accordance with due process of law.

The Court is of the opinion and concludes that Petitioner did not voluntarily withdraw his plea of "not guilty" and enter a plea of "guilty," and the Petition for Writ of Habeas Corpus should be granted, and a new trial ordered.

Upon the last hearing, there was much evidence introduced which leaves this Court with a firm conviction that Petitioner was not properly advised of his rights and entered his plea of guilty upon the belief, if not the assurance, of the prosecuting attorney and the Trial Judge, and Petitioner's attorney, that a prior sentence of twenty-five years for robbery with firearms would run concurrently with his forty year sentence for manslaughter imposed by the District Court of Tulsa County. Upon the charge of robbery with firearms, there remained, according to the record and Petitioner's belief at the time, approximately fourteen years yet to be served.

Some of the pertinent portions of the testimony will be quoted. A newspaper reporter for the Tulsa "Tribune," Mr. Bulloch, stated that he wrote an article for the "Tribune," a daily newspaper of Tulsa, Oklahoma, and that the article was a true account of the pertinent portions of the State District Court trial. In this account, the witness, reading from the newspaper article to refresh his memory, stated:

"County Attorney Elmer W. Adams, who had previously demanded the death penalty, recommended the sentence and also recommended that fourteen years of a revoked parole run concurrently with the sentence. This was also ordered by the Court * * * *"

"When he was discussing the proposed guilty plea, Judge Taylor (the Trial Judge) asked Ward if he had anything to say, and Ward inquired as to whether the commuted parole would be mentioned in the commitment papers. Informed that everything would be handled properly, * * * *"

Upon redirect examination, the witness testified:

"Q Your reporting of what transpired there, that he inquired of the Court if a previous sentence would be commuted as a part of this sentence, that inquiry was made by Mr. Ward there?

"A Yes, sir.

"Q And the Court told him that that would be done, is that right, sir?

"A Yes, sir."

The Petitioner, Arley Ward, was called as a witness, and in part testified as follows:

"Q When you changed your plea from not guilty to guilty, did you participate in any discussion with the County Attorney and the District Judge about the circumstances under which you would change your plea from not guilty to guilty?

"A Yes, sir. I specifically cited to the Judge that I would enter the plea with the agreement made that the County Attorney had just made to me, that the Court would go along with him on this issue.

"Q Now, on 'this issue' do you have reference to a previous sentence?

"A Yes, sir.

"Q That you were being held on at that time?

"A Yes, sir. He—the County Attorney, and also the Assistant County Attorney, told me while I was in service that there had been an additional law passed in the legislature to where a person had to serve the maximum term of his sentence, after he was paroled.

"Q If the parole were revoked?

"A Yes, sir. And I had approximately 14 years to serve and they would let it run concur-

rently with the 25 years—or with the 40-year sentence, and then I asked Mr. Coffey, defense counsel, I said 'Will they do that?' He said, 'If they tell you they will, they will do it.'

"Q Did they tell you they would?

"A Yes, sir, they did.

"Q And was it ever done to your knowledge; did you have to serve the 14 years on the previous sentence?

"A Yes, sir, I served the parole.

"Q You have now served that?

"A Yes, sir.

"Q And you are now serving time on the 40-year sentence?

"A Yes, sir.

"Q To your knowledge that sentence was never commuted?

"A Never was.

"Q And you had to serve it?

"A Yes, sir."

Perhaps the most convincing evidence that Petitioner's plea was not voluntarily entered is a letter dated October 1, 1947, from Elmer W. Adams, the County Attorney of Tulsa County, Oklahoma, written to the Pardon and Parole Board, in regard to State vs. Arley Ward, shown in the transcript of the record in the Court of Appeals, Tenth Circuit, Case No. 7762, at Page 80, which reads as follows:

"Gentlemen:

The above named defendant, Arley Ward, has this date entered a plea of guilty to a charge of manslaughter in the first degree, and was sentenced to forty years on recommendation of this office. This plea of guilty on the part of the defendant to the charge of first degree manslaughter came after a murder trial in the District Court of Tulsa County, which lasted two days, and after all the evidence was in. The reason the State made recommendation was that the evidence did not indicate premeditation on the part of the defendant to kill Earl Newell.

Prior to the time defendant, Arley Ward, entered his plea of guilty to first degree manslaughter, I agreed with him and his attorney that I would recommend to the Pardon and Parole Board that Arley Ward be permitted to do his time on the forty year sentence this date given him and the remaining time he has to do on his parole revocation dated July 11, 1946, concurrently. I have a certified copy of this said parole revocation before me, and it reflects that Arley Ward, No. 29124, was convicted in the District Court of Murray County, Oklahoma, of the crime of robbery with fire-arms, and was sentenced to serve a term of twenty five years in the Oklahoma State Penitentiary at McAlester; that on April 28, 1945, a parole conditioner on good behavior was issued to the said Arley Ward for the purpose of enabling him to enter the armed forces. In connection with the armed service of Arley Ward, I have a letter in my file from the Adjutant General of the Army, reflecting that Arley Ward received an honorable discharge from the Army on November 25, 1946.

The defendant, Arley Ward, *would not have* ENTERED A PLEA OF GUILTY AND TAKEN THE FORTY YEARS ON the manslaughter charge in the District Court of Tulsa County, unless HE FELT THAT THE STATE WOULD PERMIT him to do the forty years concurrently with the time he has left to serve on his parole revocation. It is therefore recommended to the Pardon and Parole Board that Arley Ward be permitted to do the time fixed in the parole revocation and the forty year sentence for manslaughter, concurrently.

If there is any further information this office can furnish concerning this matter, please feel free to call on us.

Yours very truly,
(sgd.)     Elmer W. Adams
        ELMER W. ADAMS
        County Attorney.
            (Emphasis mine) "

Further, Mr. Adams, the County Attorney, testified, Page 82:

"Q   Now, you know at the time that Arley Ward was insistent upon the proposition that he should not have to do the time on the revocation of his parole from Murray County and do forty years on top of that? You were familiar with that?

"A   That is right."

██ The guilt or innocence of the Petitioner is not in issue here. The passage of time nor the absence of any showing that in the event of a new trial a different result is likely requires the denial of Petitioner's application. The accused's plea may be accepted only if made voluntarily, understandingly, and knowingly. If it appears that a guilty plea is the product of coercion, mental or physical, or was unfairly obtained, or given through ignorance, fear or inadvertence, it must be vacated as void, since it is violative of Constitutional safeguards. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009. "A conviction which rests upon a coerced plea of guilty is inconsistent with due process of law."

In United States v. Tateo, 214 F.Supp. 560, U.S.D.C., S.D.N.Y. (1963), a proceeding to vacate a judgment of conviction under 28 U.S.C.A. § 2255 on the grounds that the defendant's plea of guilty resulted from coercion, the defendant contended that his plea resulted from the trial judge's statements in the midst of the trial that if the defendant continued with the trial and were found guilty, the court would impose a life sentence upon the kidnapping charge and the maximum sentence on each of the remaining counts to be served consecu-

tively. The court in setting aside the judgment of conviction and ordering a new trial said, in part:

"The defendant's guilt or innocence is not in issue on this motion. And neither the passage of time nor the absence of any showing that in the event of a new trial a different result is likely requires the denial of the defendant's motion. Moreover, the fact that the defendant in open court at the time of the entry of the plea stated that it was not coerced, while evidential on the issue, does not foreclose inquiry as to its voluntariness. * * *

"However, an accused's plea may be accepted only if it is made voluntarily and knowingly. And if it appears that a guilty plea is the product of coercion, either mental or physical, or was 'unfairly obtained or given through ignorance, fear or inadvertence,' it must be vacated as void since it is violative of constitutional safeguards. A conviction which rests upon a coerced plea of guilty, no less than one which rests upon a coerced confession, is inconsistent with due process of law."

The only evidence before the United States District Court was to the effect that Ward did not really desire to withdraw his plea of not guilty and enter a plea of guilty but that he was induced to do so because of the offer of the prosecuting attorney. This offer, coming after some two days of trial where petitioner was charged with first degree murder, surely acted upon him so as to rob him of his will and judgment.

■ A sentence which is the result of a coerced plea of guilty is subject to collateral attack by habeas corpus and in Watts v. United States, 107 U.S.App. D.C. 367, 278 F.2d 247, page 249 (1960), the Court said:

"* * * So, too, are guilty pleas obtained through promises of leniency by the prosecution, or those entered by the accused without knowledge of his rights. In these cases, however, the plea is involuntary since it represents a 'choice' made under threat of force, or by improper inducements, or through ignorance of his rights. Such action by an accused is, in reality, no choice at all. Of overriding importance is that in such cases the plea suffers the defect of inherent untrustworthiness."

In Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942), the Supreme Court, on a motion to proceed in forma pauperis on petition for writ of certiorari to the Circuit Court of Appeals for the 9th Circuit to review a judgment affirming an order of the District Court of the United States denying a petition for writ of habeas corpus, said (page 103 of 316 U.S., page 965 of 62 S.Ct., page 1304 of 86 L.Ed.):

"The Court of Appeals for the Ninth Circuit affirmed the order of the district court, 124 F.2d 587. In view of the fact that petitioner when he pleaded guilty had been represented by counsel, a majority of the court thought he could not by habeas corpus attack his sentence on the ground that his plea was coerced. The opinion states that petitioner 'waived the defense and the constitutional right if any he had, and cannot assert it now on habeas corpus proceedings'. The case is before us on a motion of petitioner to proceed in forma pauperis on his petition for certiorari and the Government's confession of error. We grant the motion and the petition for certiorari.

"The Government confesses error for the reason that the habeas corpus petition raises the material issue whether the plea was in fact coerced by the particular threats alleged which stand undenied on the record, and that upon that issue petitioner is entitled to a hearing in accordance with Walker v. Johnston, 312 U.S. 275 [61 S.Ct. 574, 85 L.Ed. 830].

" * * * If the allegations are found to be true, petitioner's constitutional rights were infringed. * * And if his plea was so coerced as to deprive it of validity to support the conviction, the coercion likewise deprived it of validity as a waiver of his right to assail the conviction. Johnson v. Zerbst, 304 U.S. 458, 467 [58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 1468].

"The issue here was appropriately raised by the habeas corpus petition. The facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal. In such circumstances the use of the writ in the federal courts to test the constitutional validity of a conviction for crime is not restricted to those cases where the judgment of conviction is void for want of jurisdiction of the trial court to render it. It extends also to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights. * * *

"The principle of res judicata does not apply to a decision on habeas corpus refusing to discharge a prisoner, Salinger v. Loisel, 265 U.S. 224 [44 S.Ct. 519, 68 L.Ed. 989]. * * * "

■ A guilty plea induced by promises which deprive the plea of its voluntary character is void. The United States Supreme Court, in Machibroda v. United States, 368 U.S. 487, at page 489, 82 S.Ct. 510 at page 511, 7 L.Ed.2d 473, said at page 476:

"In support of his claim that his pleas of guilty had been involuntarily made, the petitioner's motion and supporting affidavit set out detailed factual allegations. Specifically, the motion and affidavit alleged that on three separate occasions, identified as to time and place, an Assistant United States Attorney had promised the petitioner that he would receive a total prison sentence of not more than twenty years if he pleaded guilty to both informations. * * * "

And again at page 493 of 368 U.S., page 513 of 82 S.Ct., page 478 of 7 L.Ed.2d:

"There can be no doubt that, if the allegations contained in the petitioner's motion and affidavit are true, he is entitled to have his sentence vacated. A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. * * * "

■ Examining the entire record, the Court finds that the prosecuting attorney, the Trial Judge, and the Petitioner's attorney, represented to Petitioner that the remaining portion of his twenty-five year sentence for armed robbery imposed by the District Court of Murray County, Oklahoma, would run concurrently with the forty year sentence imposed by the District Court of Tulsa County, Oklahoma, and with this understanding and reliance upon the prosecuting attorney and the Court, and his own attorney, the Petitioner entered his plea of guilty. In my opinion this was not a voluntary plea. The Court finds that the statements made by the trial Court and the County Attorney were calculated to influence the Petitioner to enter a plea of guilty. The prosecuting attorney and the District Judge knew, or should have known, whether their representations could be fulfilled. Petitioner, who was untrained in the niceties of criminal law, had a right to believe and rely upon the promises made to him, which were not or could not be fulfilled.

The Court concludes that as a matter of law and upon the facts, Petitioner's plea of guilty was not voluntary and free, and was made upon representations made to him which were not carried out, resulting in the plea of guilty; accordingly, Petition for Writ of Habeas Corpus is granted. Issuance of the Writ will be stayed for sixty days from this

·date to permit the State of Oklahoma, if it so desires, to take action in accordance with the law and this order, or to seek review of this order. Failing to ·do so, it is the order of this Court that ·at the expiration of said sixty-day period, the said Arley Ward be released from custody of the State of Oklahoma, :and Ray H. Page, Warden of the Oklahoma State Penitentiary, from the sentence imposed upon Arley Ward by the Tulsa County District Court.